# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# HELENA DIVISION

LUEVENIA DAVIS                                                                                          PLAINTIFF

v.                                         No. 2:04CV00204 JLH

MID-DELTA COMMUNITY SERVICES, INC.                                                  DEFENDANT

## OPINION AND ORDER

Luevenia Davis, an African American, brought this employment discrimination suit under 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), Title VII, and the Arkansas Civil Rights Act after Mid-Delta Community Services, Incorporated, terminated her from her position as head teacher in Mid-Delta's Elaine, Arkansas, head start center. Mid-Delta has alleged that it fired Davis because she violated Mid-Delta's policies and state and federal regulations. Davis has alleged that she was really fired on account of her race, and that Mid-Delta's reason is a mere pretext. Mid-Delta has now moved for summary judgment. For the following reasons, Mid-Delta's motion for summary judgment is granted with respect to Davis's § 1985(3) conspiracy claim but denied with respect to Davis's race discrimination claim.

## I.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

The Eighth Circuit has said that summary judgment should seldom be granted in discrimination cases where inferences are often the basis of the claim. *Duncan v. Delta Consolidated Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004). *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J. dissenting).

## II.

Davis was employed as the head teacher for Mid-Delta's head start center in Elaine, Arkansas. At the time of her termination, the only staff members at the center were Davis; Sarah Seals, a teacher's aide; Connie Hunt, the van driver; and Ms. Gathings, the custodian and van monitor. Davis's last evaluation prior to her termination stated that Davis was meeting expectations. The head start director Linda King, an African American and Davis's immediate superior, stated that Davis was a good teacher. While Davis had been on probation in the fall of 2003 for not arriving at the center on time, Davis successfully completed the probation. Although on one occasion between the end of her probation and her termination Davis was late for work, Davis was not written up for that occasion or any lack of performance during that time period.

At around 1:00PM on April 14, 2004, Davis received a call from her babysitter, who was babysitting Davis's 16-month-old son Martin. The babysitter was pregnant and having complications with her pregnancy. She told Davis that she was sick and had to go to the doctor. Davis told her that she would come by and pick up Martin so that the babysitter could go to the doctor. Davis left the center shortly after the phone conversation to pick up Martin. She did not sign out. When Davis returned to the center with Martin approximately ten minutes later, they went to the center's office. Seals was in the classroom with the children, who were on their cots taking their

afternoon nap. While Davis worked in the office, Martin slipped through a crack in the office door and went into the classroom. A group of children left their cots to play with Martin. One of them, a girl, attempted to hug Martin. Martin bit the girl on her face, arm, and stomach.

Davis did not notify the girl's parents about the incident before they saw the bite marks on their daughter when she returned home from school. The girl's parents called the Arkansas Department of Human Services ("DHS") child abuse hotline and reported Davis for child maltreatment. The allegation the DHS investigated was that Davis neglected the girl who was bitten by leaving her in a classroom without adult supervision. The girl's parents also called King on April 14 and Mid-Delta's director of administration Bobbie Salter—a Caucasian and King's superior—on April 15 to tell them what happened. On April 15, Mid-Delta's executive director Margaret Staub—a Caucasian and Salter's superior—sent a memorandum to Davis suspending her. That memorandum stated:

> Upon completion of the investigation of this incident, you will be notified of the determination and your status. If the allegation is determined to be unfounded, you will be reinstated and receive back pay for time off on suspension.

King and Salter investigated the incident and wrote reports of their findings to Staub. On April 15, King interviewed the employees at Elaine and took down written statements regarding the incident. Seals's written report demonstrates that she was in the classroom when the incident occurred. King shared all the written information that she received from the employees with Salter. On April 23, King gave Davis a corrective action memorandum. A corrective action memorandum is a less serious form of discipline than a reprimand, and much less serious than termination. The memorandum noted that Davis had failed to sign out when she went to pick up Martin. On May 16, DHS Child Care Licensing Specialist Dorothy Hill sent Salter a letter confirming DHS's preliminary

3

finding of child maltreatment on the part of Davis and informing Mid-Delta that the Elaine head start center would now have frequent monitor visits.

According to Mid-Delta policy, Staub had the power to terminate Mid-Delta employees upon staff recommendations. Around May 15, Staub decided that Davis should be terminated. Staub asked King and Salter whether they concurred in the decision. King thought that Davis should be shown leniency in the form of some type of progressive disciplinary action. Staub, however, convinced King to change her mind, and all three concurred with the decision to terminate Davis. On May 20, Staub sent Davis a letter of termination. That letter stated:

> As a follow-up to the suspension action dated April 15, 2004, the allegation of child neglect has been determined by the Department of Human Services to be founded. Due to your failure to comply with Agency policies and directives, together with violation of state and federal regulations regarding child care licensing standards for supervision of children, your contract with Mid-Delta Head Start Program is terminated effective April 15, 2004.

On October 11, 2004, an administrative law judge held that the allegations of child abuse against Davis were unsubstantiated. Davis then sent a letter to both King and Staub enclosing the administrative law judge's decision and asking to be reinstated according to Staub's April 15 memorandum. Neither King nor Staub responded to Davis's letter.

On January 21, 2005, Davis brought this lawsuit against Mid-Delta.

**III.**

**A.    Race Discrimination**

Davis alleges that she was terminated on account of her race in violation of Title VII, 42 U.S.C. § 1981, and ACRA. Where, as here, there is no direct evidence of discrimination, a claim of racial discrimination is analyzed under the burden-shifting framework set forth in *McDonnell*

*Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (8th Cir. 2005). Under this framework, the plaintiff must first present a prima facie case of race discrimination by showing that (1) she is a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir. 2005). If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004). If the employer offers such a reason, the plaintiff must then present evidence sufficient to create a fact issue as to whether the employer's articulated reason is pretextual and to create a reasonable inference that race was a motivating factor. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

Mid-Delta does not dispute that Davis satisfies the first and third elements of the prima facie case. Mid-Delta argues, however, that Davis cannot satisfy the second element because Davis's violations of Mid-Delta's policies and state and federal regulations demonstrate that Davis was not meeting Mid-Delta's legitimate expectations. Specifically, Mid-Delta lists the following policy and regulatory violations: Davis left the center without signing out, a violation of a Mid-Delta policy; Davis left only one teacher's assistant in the classroom when she left, a violation of a federal regulation requiring two paid staff to be with the children at all times; Davis brought her 16-month-old child into a classroom of older children, a violation of a state regulation prohibiting infants and toddlers from intermixing with older children; and the findings by the DHS that the allegations of child maltreatment against Davis were founded.

In a similar vein, Mid-Delta argues both that Davis cannot meet the fourth element of the

prima facie case because of the seriousness of her policy and regulatory violations and that Davis cannot show that Mid-Delta's legitimate, nondiscriminatory reason for terminating Davis—namely, her policy and regulatory violations—are pretext. Thus, this case, stripped to its essentials, is about whether Davis's policy and regulatory violations were the real reason for her termination, or whether those violations were just pretext for racial discrimination. *Cf. Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004) (finding that the fourth element of the prima facie case and the pretext inquiry both turned on whether the proffered nondiscriminatory reason was true or just a pretext for discrimination); *see also Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002) ("When a plaintiff produces evidence sufficient to raise an inference that the employer applied its legitimate expectations in a disparate manner, the second and fourth prongs of *McDonnell Douglas* merge . . . ."); *Curry v. Pulliam*, 234 F. Supp. 2d 921, 931 (S.D. Ind. 2002) ("[W]here . . . the adverse employment decision is supposedly based on the employee's performance, the second prong of the prima facie case . . . amounts to the same issue as the issue on pretext: whether the employer gave an honest explanation of its adverse decision."). The evidence that Davis has presented to this Court is enough to create a genuine issue of material fact on that issue.

First, Davis has produced evidence suggesting that the policy and regulatory violations Davis allegedly committed were not sufficiently weighty to justify termination. Both Staub and King testified in their depositions that failing to sign out and bringing a child into the center are not, by themselves, offenses that require automatic termination. While Staub stated in her deposition that the DHS finding that the allegations against Davis of child maltreatment were founded "rounded out" the information she needed to fire Davis, King and Salter knew the falsity of the maltreatment allegation that Davis had left the girl unsupervised because they knew Seals was in the room when

Martin bit the girl.  King even stated in her deposition that she did not believe that Davis had committed child maltreatment.  Furthermore, by April 23, King, Davis's immediate superior, knew about all of Davis's policy and regulatory violations, yet King chose only to discipline Davis for not signing out.  King dealt with this policy violation by placing a corrective action memo in Davis's file, a form of discipline less serious than a reprimand, and much less serious than termination. King did not recommend that Davis be terminated and thought that Davis could be shown leniency in the form of some type of progressive disciplinary action.  Only after King spoke with Staub did King change her mind and concur with the decision to terminate Davis.

Second, Davis has also produced evidence that the policies and regulations Mid-Delta claims Davis was terminated for violating were not strictly followed by Mid-Delta.  Davis testified at her deposition that the specialists who come to the Elaine head start center routinely leave without signing out.  Delores Speed, a health specialist for Mid-Delta, testified at her deposition that other employees have brought their children to the center without being disciplined.  Davis's teaching assistant Seals stated in an affidavit that, when Davis was on maternity leave, Seals was left for three weeks in the classroom alone with 21 children, a violation of the federal regulation.  When Seals requested assistance from Staub, none was forthcoming.

Third, Davis has produced evidence of other regulatory violations of comparable seriousness by Mid-Delta's Caucasian employees who were not disciplined.  The state daycare licensing board absolutely prohibits corporal punishment.  Staub stated at her deposition that she would terminate any staff member who engaged in corporal punishment.  Davis gave two examples at her deposition, however, where apparent violations of the strict rule against corporal punishment went unpunished. Jamie Sanderlin, a Caucasian employee of Mid-Delta, was accused of spanking a child.  While the

parents of the child complained to Forestine Johnson, the former head start director, Sanderlin was not suspended or terminated. Similarly, Francis Palmer, a Caucasian employee of Mid-Delta, spanked a child. Davis reported the incident to Johnson, but Palmer was not suspended or terminated.

Finally, Davis has produced evidence that Mid-America does not always follow its own policies. Staub testified that Mid-Delta's policy was that employees suspended for child maltreatment would be reinstated and would receive back pay if they were cleared of the maltreatment allegations. Davis was cleared of the allegations of child maltreatment, yet she was never reinstated and did not receive back pay. Staub also testified that state law required Mid-Delta to report to DHS when an employee is accused of child maltreatment, yet no one from Mid-Delta reported the incident involving Davis.

Salter and Staub both stated in their depositions that another reason Davis was fired was because of her prior history of job performance. King testified in her deposition that Davis was a good teacher and that, as of her last evaluation prior to termination, Davis was meeting expectations. While Staub and Salter specifically pointed to Davis's past history of being late for work as a reason for termination, Davis had successfully completed probation in the fall of 2003 for not arriving at the center on time. Between the end of her probation and her termination, Davis was late to the center only on one occasion. No disciplinary action resulted from that one occasion. And on no occasion between her completion of probation and her termination was Davis written up for any lack of performance.

Davis has presented sufficient evidence to allow a jury to conclude that Mid-Delta's reasons for terminating her were not the real reasons. Viewing the evidence in the light most favorable to

the nonmoving party, a reasonable jury could conclude that Mid-Delta fired Davis because of her race, not because of her policy and regulatory violations. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48, 120 S. Ct. 2097, 2108-09, 147 L. Ed. 2d 105 (2000) (holding that independent evidence of discriminatory animus besides evidence that the employer's proffered reason is pretextual is not always required to support an inference of discrimination); *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1024 (8th Cir. 1998) ("[A]t least in some cases, a reasonable inference of discrimination may be drawn through a process of elimination."). Mid-Delta's motion for summary judgment is therefore denied as to Davis's race discrimination claim.

**B.     Conspiracy to Deprive Civil Rights**

Mid-Delta argues that it is entitled to summary judgment on Davis's 42 U.S.C. § 1985(3) claim because Davis has failed to plead the essential elements of such a claim. To recover for a conspiracy to violate civil rights in violation of § 1985(3), a plaintiff must prove four elements: (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive the plaintiff either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right. *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). Davis has neither pled nor produced any facts to satisfy the elements of her § 1985(3) claim against Mid-Delta. Summary judgment is therefore granted on the § 1985(3) claim.

## CONCLUSION

For the foregoing reasons, Mid-Delta's motion for summary judgment is GRANTED as to Davis's 42 U.S.C. § 1985(3) claim and DENIED as to Davis's race discrimination claim. Document #17.

IT IS SO ORDERED this 23rd day of March, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE